T.C. Memo. 2015-170

UNITED STATES TAX COURT

RANDY TILLERY AND RACHEL BENATOR, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3733-13L.                    Filed August 27, 2015.

Brian E. Thompson, for petitioners.

Robert M. Romashko, for respondent.

MEMORANDUM OPINION

PARIS, Judge:  This case is before the Court on a petition for review of a

Notice of Determination Concerning Collection Action(s) Under Section 6320

and/or 6330 (notice of determination) dated January 14, 2013.  See sec. 6330(d).[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2] The issue for decision is whether respondent's determination to reject petitioners' proposed installment agreement and proceed with collection action by levy regarding petitioners' unpaid tax liabilities for 2005, 2006, 2008, 2009, and 2010 was an abuse of discretion.

## Background

The parties submitted this case for decision fully stipulated. See Rule 122(a). The stipulation of facts filed and the attached exhibits are incorporated herein by this reference. Petitioners Randy Tillery and Rachel Benator, husband and wife, lived in Utah when they filed their petition.

## I. Petitioners

For all years in issue petitioners owned and operated an eye care facility. Mr. Tillery managed the finances and the client services for the facility, and Dr. Benator was the ophthalmologist. Per the notice of determination, petitioners owed $153,957.27 in unpaid tax and penalties for all years in issue as of January 9, 2013. For the years in issue petitioners' adjusted gross income ranged from $187,364 to $225,972. Mr. Tillery was 64 years old and Dr. Benator was 62 years old at the time of the collection due process (CDP) hearing on January 9, 2013.

---

[1](...continued)
Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** II.  Petitioners' Tax Returns for 2005, 2006, 2008, 2009, and 2010

Petitioners received extensions of time to file but still untimely filed their joint Federal income tax returns for 2005, 2006, 2008, 2009, and 2010.

A.  2005

Petitioners' 2005 Federal income tax return was due in October 2006 after they received an extension of time to file.  On January 18, 2010, petitioners filed their 2005 return and reported a Federal income tax liability of $42,122.  Petitioners reported tax withheld of $11,766 but did not remit the balance of the liability with their return.  On April 4, 2011, on the basis of petitioners' filed return, respondent assessed the unpaid tax plus penalties and interest for 2005.

B.  2006

Petitioners' 2006 Federal income tax return was due in October 2007 after they received an extension of time to file.  On March 11, 2011, petitioners filed their 2006 return and reported a Federal income tax liability of $39,795.14.  Petitioners reported tax withheld of $14,074 but did not remit the balance of the liability with their return.  On May 9, 2011, on the basis of petitioners' filed return, respondent assessed the unpaid tax plus penalties and interest for 2006.

**[\*4]**  C.  <u>2008</u>

Petitioners' 2008 Federal income tax return was due in October 2009 after they received an extension of time to file. On April 5, 2011, petitioners filed their 2008 return and reported a Federal income tax liability of $32,464. Petitioners reported tax withheld of $25,114 but did not remit the balance of the liability with their return.[2] On June 13, 2011, on the basis of petitioners' filed return, respondent assessed the unpaid tax plus penalties and interest for 2008.

D.  <u>2009</u>

Petitioners' 2009 Federal income tax return was due in October 2010 after they received an extension of time to file. On July 14, 2011, petitioners filed their 2009 return and reported a Federal income tax liability of $38,025. Petitioners reported tax withheld of $23,008 but did not remit the balance of the liability with their return. On August 15, 2011, on the basis of petitioners' filed return, respondent assessed the unpaid tax plus penalties and interest for 2009.

E.  <u>2010</u>

Petitioners' 2010 Federal income tax return was due in October 2011 after they received an extension of time to file. On October 20, 2011, petitioners filed

---

[2]Petitioners sold securities for $99,052 in 2008. The sales' proceeds were substantially more than petitioners' reported liability for the year.

[*5] their 2010 return and reported a Federal income tax liability of $32,387. Petitioners reported tax withheld of $27,050 but did not remit the balance of the liability with their return.[3] On November 28, 2011, on the basis of petitioners' filed return, respondent assessed the unpaid tax plus penalties and interest for 2010.

III.    Respondent's Collection Actions

On August 25, 2011, respondent received petitioners' letter requesting an installment agreement offering to pay $2,500 per month.

On or about October 18, 2011, respondent assigned petitioners' account to Revenue Officer Pete Trebesch (RO Trebesch). RO Trebesch determined after reviewing the account that he could not issue a final demand for payment because of petitioners' pending installment agreement request.

On November 15, 2011, petitioners provided RO Trebesch with a Form 2848, Power of Attorney and Declaration of Representative, for their representative, Michael Plantinga (representative). Also on November 15, 2011, RO Trebesch requested financial records from petitioners to determine whether they were eligible for an installment agreement. The requested documents included the previous 120 days of bank statements, wage slips, and five canceled

---

[3]Petitioners sold securities for $31,002 in 2010.

[*6] checks. He also requested a list of petitioners' real property with mortgage and payoff documentation; a copy of their 2010 Form 1040, U.S. Individual Income Tax Return; a list of their vehicles with lienholder documentation and payoff; a list of any of petitioners' other assets; copies of documents verifying any expenses or liabilities with proof of monthly payments; and a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. On December 19, 2011, RO Trebesch timely received the requested records.

Petitioners reported equity in their primary home of $337,047 and equity in their rental properties of $120,000 on Form 433-A.[4] A monthly income and expense analysis reported disposable monthly income of $9,915 after petitioners paid living expenses.

On January 6, 2012, petitioners' representative sent a letter to respondent formally requesting an installment agreement that would cover petitioners' tax liabilities for 2005, 2006, 2008, 2009, and 2010 and reducing petitioners' initial payment offer from $2,500 per month to $1,000 per month. RO Trebesch analyzed petitioners' financial information and determined that they had equity

---

[4]The Form 433-A showed that petitioners obtained a loan of at least $440,000 in 2007 to purchase rental properties.

[*7] greater than the balance due on their tax liabilities and were able to pay $9,915 per month or $6,790 per month if net rental income was not included. Accordingly, RO Trebesch rejected the proposed installment agreement with a payment of $1,000 per month.

On January 26, 2012, respondent sent petitioners Letter 1058A, Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice). The levy notice advised petitioners that respondent intended to levy to collect the unpaid liabilities for 2005, 2006, 2008, 2009, and 2010. The levy notice states that for the periods in issue petitioners owed $142,196.61 as of February 5, 2012.

On February 7, 2012, petitioners' representative left a message for RO Trebesch stating that petitioners had begun the process of obtaining a loan to fully pay their tax liabilities. Also on February 7, 2012, RO Trebesch left a message for petitioners' representative stating that he would delay filing a notice of Federal tax lien (NFTL) but would be required to file one if he did not see significant progress on the loan application.

On February 24, 2012, respondent timely received petitioners' Form 12153, Request for a Collection Due Process or Equivalent Hearing. Petitioners' Form 12153 did not challenge the underlying liabilities but did request an installment

[*8] agreement and forwarding of the case to the Internal Revenue Service Appeals Office in the event that respondent and petitioners could not reach an installment agreement.

On February 29, 2012, RO Trebesch delayed the NFTL filing to April 3, 2012, because petitioners' representative provided proof that they had applied for a loan against their personal residence. On March 29, 2012, however, RO Trebesch was notified that the loan would not go through because Dr. Benator had not signed the loan application. On March 30, 2012, Dr. Benator's signature was added to the loan application. On April 3, 2012, RO Trebesch delayed the NFTL filing until May 11, 2012, to facilitate approval of the loan.

On May 18, 2012, RO Trebesch learned that the lender had given petitioners a list of items needed to close the loan and that they had failed to respond. Petitioners' excuse was that they had been out of town and had had a sick employee. On May 18, 2012, RO Trebesch also contacted petitioners' representative and told him that he would not grant another extension as he had already delayed the NFTL filing three times.

On May 31, 2012, the loan process was further delayed because the underwriter had requested additional information about petitioners' business, as well as a copy of their 2011 Federal income tax return (which had not been filed

[*9] and was on extension). On July 9, 2012, RO Trebesch called petitioners'
representative but was unable to reach him. RO Trebesch left a message
requesting an update on the loan. On July 24, 2012, because RO Trebesch still
had not heard from petitioners or their representative regarding the status of the
loan, he requested the NFTL be filed.[5]

On July 26, 2012, RO Trebesch referred the case for a CDP hearing. On
August 17, 2012, the Salt Lake City Appeals Office sent a letter to petitioners
stating that it had received their case.

IV.   CDP Hearing

On October 19, 2012, petitioners filed a second Form 2848 naming Brian
Thompson as their new attorney. On December 6, 2012, Settlement Officer Aaron
Hansen (SO Hansen) mailed petitioners a letter scheduling a telephone CDP
hearing for January 8, 2013, and requesting a completed Form 433-A and proof of
estimated tax payments for 2012. On December 20, 2012, Mr. Thompson faxed to
SO Hansen an updated Form 433-A with supporting documents and a proposal for
an installment agreement whereby petitioners would make an initial payment of
$30,000 and monthly payments of $2,000. As of December 2012 petitioners owed

---

[5]Per account transcripts, a lien notice was filed August 3, 2012, and
petitioners were issued a NFTL on August 7, 2012. The record does not reflect
that petitioners ever acted on the NFTL.

[*10] $153,957.27 in tax and penalties, but their updated Form 433-A showed over $800,000 of equity in their assets.

On January 8, 2013, SO Hansen held a telephone CDP hearing with Mr. Thompson. During the hearing SO Hansen considered numerous documents, including petitioners' previously submitted financial information, correspondence between petitioners and respondent, RO Trebesch's collection history, and petitioners' account transcripts for the years in issue. SO Hansen specifically noted that during the hearing petitioners did not cite advanced age, ill health, or special circumstances.

During the hearing SO Hansen informed petitioners that they did not qualify for an installment agreement because they could fully pay their liabilities by liquidating assets but that he would consider a direct debit installment agreement with an initial payment of $105,439 and remaining payments of $2,000 per month. SO Hansen gave petitioners until the end of the day to decide whether to accept that offer. Otherwise he intended to sustain the proposed collection by levy because they had sufficient assets to fully pay their liabilities and a seven-year history of noncompliance.

Later on January 8, 2013, Mr. Thompson informed SO Hansen that petitioners were again considering refinancing their home to pay their tax

**[*11]** liabilities and indicated he would call back once they had discussed doing so. On January 9, 2013, Mr. Thompson told SO Hansen that petitioners still had not decided whether to try to borrow against their home equity or pull money out of their retirement account. SO Hansen informed Mr. Thompson that he would issue a notice of determination and sustain the collection action by levy because petitioners did not qualify for an installment agreement, offer-in-compromise, or currently not collectible status, and they were not prepared to fully pay immediately.

On January 14, 2013, respondent issued petitioners the notice of determination sustaining the proposed levy for all years in issue. As of January 9, 2013, petitioners owed $153,957.27 in unpaid tax and penalties. The notice of determination further states that petitioners had net equity in their assets of $802,901.01 and they could pay $8,612 per month after allowable expenses. Accordingly, SO Hansen rejected petitioners' proposed installment agreement since under the Internal Revenue Manual (IRM) pt. 5.14.1.4 (June 1, 2010), petitioners did not qualify for an installment agreement since their balance could have been fully satisfied if they liquidated assets or used their assets as collateral to borrow money to pay their tax liabilities.

**[\*12]** On February 12, 2013, petitioners timely filed a petition with this Court for review of SO Hansen's determination.

Discussion

Under section 6331(a), if a person liable for a tax fails to pay it after demand, the Secretary may collect the unpaid amount, including any interest and additions to tax, by way of a levy "upon all property and rights to property * * * belonging to such person or on which there is a lien provided in this chapter for the payment of such tax." Section 6330(a) provides that no levy may be made on any property or right to property unless a taxpayer has been given notice of, and the opportunity for, an administrative review of the matter. If dissatisfied with the outcome of such review, that taxpayer may seek review in the Tax Court, during which the suspension of the levy continues.[6] Sec. 6330(d) and (e); Kobs v. Commissioner, T.C. Memo. 2012-37, slip op. at 6.

I.    Standard of Review

Where the validity of the underlying tax liability is properly in issue, the Court will review the matter de novo. Davis v. Commissioner, 115 T.C. 35, 39

---

[6]A taxpayer receiving a notice of Federal tax lien has hearing rights similar to the hearing rights accorded a taxpayer receiving a notice of intent to levy. See sec. 6320(c). Petitioners' NFTL is not in issue here.

**[\*13]** (2000). Where the underlying tax liability is not properly in issue, the Court will review the Commissioner's administrative determination for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). An abuse of discretion is any action that is arbitrary, capricious, or without sound basis in law or fact. Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioners do not challenge their underlying liabilities for 2005, 2006, 2008, 2009, and 2010. The only issue petitioners raised is whether respondent's determination to reject their proposed installment agreement and proceed with collection action by levy regarding their unpaid tax liabilities for 2005, 2006, 2008, 2009, and 2010 was an abuse of discretion. Accordingly, the applicable standard of review is abuse of discretion. See Sego v. Commissioner, 114 T.C. at 610.

II.     Whether Respondent's Determination Was an Abuse of Discretion

Before a levy may be made on any property or right to property, a taxpayer is entitled to notice of intent to levy and notice of the right to a fair hearing before an impartial officer of the Appeals Office. Secs. 6330(a) and (b), 6331(d). Taxpayers may raise challenges to "the appropriateness of collection actions" and may make "offers of collection alternatives, which may include the posting of a

**[\*14]** bond, the substitution of other assets, an installment agreement, or an offer-in-compromise." Sec. 6330(c)(2)(A). The Appeals officer must consider those issues, verify that the requirements of applicable law and administrative procedures have been met, and consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person [involved] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C); Lunsford v. Commissioner, 117 T.C. 183, 184 (2001).

III.    Rejection of the Installment Agreement

The Commissioner is authorized "to enter into written agreements allowing taxpayers to pay tax in installment payments if he deems that the 'agreement will facilitate full or partial collection of such liability.'" Thompson v. Commissioner, 140 T.C. 173, 179 (2013) (quoting section 6159(a)). The decision to accept or reject installment agreements lies within the discretion of the Commissioner. Sec. 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs. The Court does not normally make an independent determination of what would be an acceptable alternative. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). If Appeals or settlement officers follow all statutory and administrative

[*15] guidelines and provide a reasoned and balanced decision, the Court will not reweigh the equities. Thompson v. Commissioner, 140 T.C. at 179.

Petitioners argued that SO Hansen abused his discretion when he rejected the proposed installment agreement. SO Hansen rejected petitioners' proposed installment agreement for three reasons: (1) petitioners had sufficient equity in assets to fully satisfy their liabilities; (2) petitioners offered no acceptable collection alternatives; and (3) petitioners had a pattern of noncompliance. The Court will address each of these reasons in turn.

A.    Liquidation of Assets

SO Hansen rejected petitioners' proposed installment agreement because they refused to liquidate assets or use their assets as collateral for loans. This Court has generally held that there is no abuse of discretion when the settlement officer relies on guidelines published in the IRM to evaluate a proposed installment agreement. See, e.g., Orum v. Commissioner, 123 T.C. 1, 13 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005); Aldridge v. Commissioner, T.C. Memo. 2009-276; Etkin v. Commissioner, T.C. Memo. 2005-245. When a collection alternative is in issue in a CDP hearing, IRM pt. 8.22.4.2(4) (Mar. 29, 2012) directs the settlement officer to the appropriate IRM sections containing administrative

**[*16]** policies and procedures related to that alternative.  Here, IRM pt. 5.14.1.4 governs acceptance and rejection determinations for installment agreements.

IRM pt. 5.14.1.4(6) states in relevant part:  "Taxpayers do not qualify for installment agreements if balance due accounts can be fully or partially satisfied by liquidating assets, unless * * * factors such as advanced age, ill-health, or other special circumstances are determined to prevent the liquidation of assets".  The Court has routinely held that an Appeals officer does not abuse his discretion when he rejects an installment agreement because a taxpayer refuses to liquidate assets to satisfy his tax liabilities.  See Bibby v. Commissioner, T.C. Memo. 2013-281 (holding that an Appeals officer did not abuse his discretion in rejecting an installment agreement where the Appeals officer made clear that an installment agreement depended upon the liquidation of three real properties and the taxpayer would not agree to that condition precedent); Lipson v. Commissioner, T.C. Memo. 2012-252, at *9 (holding that the settlement officer acted within her discretion in rejecting an installment agreement where the taxpayer owned investments totaling $406,805 and noting that taxpayers do not generally qualify for an installment agreement if balance due accounts can be fully or partially satisfied by liquidating assets); see also McCarthy v. Commissioner, T.C. Memo. 2013-214, at *4 (holding that the Appeals officer acted within her discretion by

[*17] requiring the taxpayer to borrow against or liquidate his significant equity in various assets before she would consider his proposed installment agreement).

Petitioners owed $153,957.27 in unpaid tax and penalties and had $802,901.01 of net equity in assets. Although petitioners did make attempts to borrow against their assets, they were not successful, and SO Hansen acted within the bounds of his discretion in rejecting the installment agreement.

Petitioners argued, for the first time in their petition, that "special circumstances" existed because of their advanced ages[7] warranting an exception to the general rule that assets must be liquidated to qualify for an installment agreement. The Court finds that there is no documentation that petitioners argued that their ages constituted special circumstances under IRM pt. 5.14.1.4(6) at the CDP hearing. The Court may not consider issues or arguments that a taxpayer did not raise as part of his CDP hearing. Giamelli v. Commissioner, 129 T.C. 107, 112-113 (2007) ("[Section 6330] contemplates consideration of issues 'raised' by the taxpayer at the hearing. Thus, if an issue is never raised at the hearing, it cannot be a part of the Appeals officer's determination."); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. ("In seeking Tax Court review of a Notice of

---

[7]See supra p. 2 for petitioners' ages.

**[*18]** Determination, the taxpayer can only ask the court to consider an issue * * * that was properly raised in the taxpayer's CDP hearing.").

Even if petitioners had properly raised their ages as a special circumstance and a reason they should not have to liquidate assets to qualify for an installment agreement, the Court would not agree with their argument. Petitioners did not allege poor health, disability, dependents with special needs, or any facts that show they would be unable to work. To the contrary, they allege in their brief they were able to work for at least 10 more years. The advanced-age or ill-health exception is designed for taxpayers who need special consideration, not for taxpayers who have merely chosen to prioritize retirement savings, investments, and building equity in their real estate over their tax obligations.

### B. No Acceptable Alternatives

SO Hansen's second reason for rejecting petitioners' proposed installment agreement was their failure to offer acceptable alternatives. SO Hansen rejected petitioners' proposed installment agreement of a one-time payment of $30,000 followed by monthly installments of $2,000 because it did not reflect the amount they could pay, which was determined to be $8,612 a month. IRM pt. 5.14.1.4(4) states: "Installment agreements must reflect taxpayers' ability to pay on a monthly basis throughout the duration of agreements." A taxpayer's ability to pay is

[*19] determined by comparing his monthly income to allowable expenses. Friedman v. Commissioner, T.C. Memo. 2013-44, at *9. Therefore, a settlement officer may accept, at a minimum, a monthly payment equal to the excess of a taxpayer's monthly income over the taxpayer's allowable expenses. Id. In reviewing for abuse of discretion the Court will neither recalculate the amount a taxpayer can pay nor substitute its judgment for that of the settlement officer. See Aldridge v. Commissioner, slip op. at 13; see also Murphy v. Commissioner, 125 T.C. at 319-320; Speltz v. Commissioner, 124 T.C. 165, 179-180 (2005), aff'd, 454 F.3d 782 (8th Cir. 2006); Hult v. Commissioner, T.C. Memo. 2007-302.

SO Hansen determined petitioners' monthly income on the basis of their financial disclosures and determined their allowable expenses according to local and national standards. This Court has held that a settlement officer does not abuse his discretion by adhering to local and national standards even if adherence to those standards would force taxpayers to change their lifestyle. See Perrin v. Commissioner, T.C. Memo. 2012-22, slip op. at 8 (citing Speltz v. Commissioner, 124 T.C. at 179); Marks v. Commissioner, T.C. Memo. 2008-226.

Because petitioners offered their installment agreement on a take-it-or-leave-it basis, there were no other alternatives for SO Hansen to consider. SO Hansen, however, gave petitioners another option, to pay a lump sum of $105,439

[*20] and make monthly payments of $2,000, but they did not accept this offer.

SO Hansen was not required to accept petitioners' offer, and the Court holds that

SO Hansen reasonably determined that their offer did not reflect their ability to

pay.

### C. History of Noncompliance

Finally, SO Hansen rejected petitioners' proposed installment agreement

because they had a history of noncompliance with the tax laws despite an ability to

pay in full. Petitioners' history of not paying their Federal income tax liabilities

and the late filing of their Federal income tax returns for 2005, 2006, 2008, 2009,

and 2010 establish a pattern of noncompliance with their Federal income tax

obligations. See Orum v. Commissioner, 123 T.C. at 13; Londono v.

Commissioner, T.C. Memo. 2003-99.

### IV. Conclusion

SO Hansen's determination properly verified that all requirements of

applicable law were met. SO Hansen did not abuse his discretion in rejecting

petitioners' installment agreement when he determined that: (1) their balance due

could have been fully satisfied by liquidating assets; (2) they provided no

collection alternatives; and (3) they have a history of noncompliance.

**[\*21]** The Court has considered the parties' arguments and, to the extent not addressed herein, concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate decision will be entered</u>.