T.C. Memo. 2012-22

UNITED STATES TAX COURT

WILLIAM B. PERRIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16712-10L.                    Filed January 19, 2012.

William B. Perrin, pro se.

<u>Susan K. Greene</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  This action was commenced in response to a notice of determination concerning collection action with respect to unpaid trust fund recovery penalties under section 6672 for five quarters ended from September 30, 2003, to September 30, 2004.  With interest calculated through June 30, 2010, the total

liabilities exceeded $399,000.  Unless otherwise indicated, all section references are to the Internal Revenue Code.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Harris County, Texas, when he filed his petition.  Petitioner is single and resided alone in a house that he owned at all times relevant to the issues discussed below.

The Watson Law Firm (Watson) was a professional corporation owned 100 percent by Charles Watson.  At all relevant times, petitioner was Watson's in-house accountant and office manager. Petitioner had signature authority on Watson's bank account and signed payroll checks for Watson.  Petitioner also signed Watson's employment tax returns for the quarters ended December 31, 2003, and March 31, 2004.

During the tax periods ended September 30 and December 31, 2003, and March 31, June 30, and September 30, 2004, petitioner signed checks and paid Watson's other creditors while Watson's employment taxes for those periods remained unpaid.  Petitioner followed Watson's instructions as to what was to be paid in order to preserve his job.  During those periods, Charles Watson enjoyed an expensive lifestyle.  Subsequently Charles Watson was imprisoned, faced State bar disciplinary proceedings, and was

involved in bankruptcy proceedings. The employment taxes thus remained unpaid.

On February 27, 2007, the Internal Revenue Service (IRS) mailed a Letter 1153, Trust Funds Recovery Penalty Letter, to petitioner, informing him that the IRS was proposing to assess a penalty against him under section 6672 as a person required to collect, account for, and pay over withheld taxes for Watson. The letter informed petitioner of his right to appeal or to protest the proposed assessment. Petitioner received the Letter 1153 and, through his then representative David Allie, submitted a written protest. After a conference, the Appeals Office determined that petitioner was a responsible person liable for Watson's unpaid employment taxes for the periods in issue here. On June 11, 2008, the IRS made jeopardy assessments against petitioner for the amounts in issue here.

On August 15, 2008, the IRS sent petitioner a Letter 1058, Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing. In response to the notice, petitioner requested a hearing through David Allie. The request for a hearing indicated that petitioner was unable to pay the balances due and that he would like to consider an offer-in-compromise or an installment agreement, but he did not propose any amounts for these alternatives. Petitioner did not challenge the existence or amounts of the underlying tax liabilities.

Between September 29, 2009, and June 17, 2010, several items of correspondence and telephone calls were exchanged between the Appeals settlement officer to whom the case was assigned and David Allie, then acting on behalf of petitioner.  David Allie provided to the settlement officer information about petitioner's financial circumstances.  The settlement officer reviewed the IRS transcripts of petitioner's account and verified that all legal and procedural requirements for the proposed levy action had been met.  After receiving a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, signed by petitioner and a copy of petitioner's 2008 Federal income tax return, the settlement officer held a face-to-face hearing with David Allie.  David Allie requested that petitioner's account be placed in "currently not collectible status".  He did not provide required forms for an offer-in-compromise or request an offer-in-compromise as a collection alternative.  He did not challenge the existence or amounts of the underlying liabilities.

The settlement officer reviewed all financial information David Allie submitted on petitioner's behalf and consulted the national and local standards established for living expenses for a one-person household in Harris County, Texas, effective March 1, 2009.  The standards set forth allowances for housing and utilities, vehicle ownership, out-of-pocket health care costs, food, clothing, and miscellaneous expenses considered as basic

living expenses. Petitioner's income, expenses, and taxes withheld were determined based on his 2008 income tax return. The settlement officer determined that petitioner could make a monthly payment of $2,438 against the outstanding employment tax liabilities. By letter dated February 1, 2010, the settlement officer offered petitioner a partial payment installment agreement of $1,257 per month beginning February 24, 2010, increasing to $2,438 per month on October 24, 2010. The proposed agreement gave petitioner time to reduce his expenses to the standard amounts used in the settlement officer's computations.

By letter dated February 24, 2010, David Allie sent to the settlement officer a copy of petitioner's Form W-2, Wage and Tax Statement, for 2009, showing a reduction in his earnings compared to 2008 and increased taxes withheld. The settlement officer then determined that petitioner could make a monthly payment of $1,944, using standards for a one-person household in Harris County, Texas, effective March 1, 2010. By letter dated March 4, 2010, the settlement officer informed David Allie that the amount of Federal income tax petitioner had chosen to have withheld was overstated and could be reduced to allow more cashflow for him to apply to the unpaid liabilities. The settlement officer offered petitioner a partial payment agreement of $783 per month beginning April 24, 2010, increasing to $1,944 per month on October 24, 2010. After receiving additional information

concerning legal fees petitioner owed, by letter dated April 2, 2010, the settlement officer offered petitioner a partial payment agreement of $583 per month beginning April 30, 2010, increasing to $1,744 per month on October 30, 2010, and further increasing to $1,944 per month on October 30, 2011.  Petitioner refused to enter into a partial payment agreement for anything over $479 per month.  On June 17, 2010, the notice of determination sustaining the proposed levy was issued.

OPINION

In his petition and at trial, petitioner argued that he was not a responsible person subject to section 6672 penalties for failure to pay the employment taxes at issue here and that it is unfair to require him to pay taxes that should be paid by Charles Watson.  Petitioner, however, had a prior opportunity to contest the underlying liabilities and is thus precluded from doing so in this proceeding.  See sec. 6330(c)(2)(B); Lewis v. Commissioner, 128 T.C. 48, 50-61 (2007); McClure v. Commissioner, T.C. Memo. 2008-136; sec. 301.6320-1(e)(3), Q&A-E2, Proced. & Admin. Regs. Moreover, petitioner's representative did not raise the underlying liabilities before the settlement officer and may not raise them here.  See Pough v. Commissioner, 135 T.C. 344, 349 (2010); Giamelli v. Commissioner, 129 T.C. 107, 111-114 (2007).

Petitioner stipulated that the settlement officer was impartial and had no prior involvement with the tax periods

involved in this case and that she verified that all legal and procedural requirements for the proposed levy action had been met. See sec. 6330(b) and (c). Thus our review of the notice of determination is for abuse of discretion. See, e.g., Jones v. Commissioner, 338 F.3d 463, 466 (5th Cir. 2003).

Proof of an abuse of discretion requires a showing that the Appeals action was arbitrary, capricious, or without foundation in fact or law. See, e.g., Giamelli v. Commissioner, supra at 111. In view of the record of the settlement officer's consideration of the financial information petitioner's representative submitted and downward adjustments to proposed partial installment agreements, we cannot characterize the settlement officer's determination as arbitrary or capricious.

Petitioner raises arguments about the assumptions in the settlement officer's computations about his tax liabilities. He contends that if he were to sell his house to bring his expenses to the national and local standards applied in his case, he would be unable to itemize deductions and would pay more in Federal income tax. This argument was not made during the administrative proceedings by petitioner's representative, and it cannot be used to show an abuse of discretion. See id. at 115; Magana v. Commissioner, 118 T.C. 488, 493 (2002).

In any event, petitioner's arguments about the details of the settlement officer's computations are unavailing. The use of

local and national standards is expressly authorized by Congress and does not constitute an abuse of discretion even if it forces a taxpayer such as petitioner to change his lifestyle. See, e.g., Speltz v. Commissioner, 124 T.C. 165, 179 (2005), affd. 454 F.3d 782 (8th Cir. 2006). Petitioner does not contend that the standards were misapplied. In reviewing for abuse of discretion, we do not recompute the appropriate amount of an installment agreement. Id.; Orum v. Commissioner, 123 T.C. 1, 12-14 (2004), affd. 412 F.3d 819 (7th Cir. 2005).

As respondent's counsel indicated at trial, petitioner may continue to negotiate with IRS collection officers concerning his tax liabilities. He is, however, entitled to only one administrative hearing and court proceeding with respect to the proposed levy. To reflect the foregoing,

Decision will be entered

for respondent.