**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-18

UNITED STATES TAX COURT

JOEL CHRISTOPHER WILSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21543-11S L.                    Filed February 25, 2013.

Joel Christopher Wilson, pro se.

<u>Bradley C. Plovan</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of

section 7463 in effect when the petition was filed.[1]  Pursuant to section 7463(b), the

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue
Code, as amended and in effect at all relevant times.

decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

This case is an appeal from respondent's notice of determination upholding the proposed use of a levy to collect petitioner's unpaid Federal income tax liabilities for 2005 and 2006.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioner resided in Maryland at the time the petition was filed.

On October 15, 2005, petitioner filed a petition for relief under chapter 7 of the Bankruptcy Code with the U.S. Bankruptcy Court for the District of Maryland (bankruptcy court). On February 8, 2006, the bankruptcy court issued a discharge order pursuant to 11 U.S.C. sec. 727 (2006).

Petitioner subsequently filed Federal income tax returns for the taxable years 2005 and 2006. Petitioner's income tax withholding was sufficient to satisfy the tax liability that he reported on his 2005 return. Petitioner reported total tax of $9,689 and tax withholding of $13,333 on his return for 2006. After issuing petitioner a refund of $3,644 for 2006, respondent determined that he was not entitled to any withholding tax credits for that year.

Respondent issued separate notices of deficiency to petitioner for the taxable years 2005 and 2006. Petitioner filed timely petitions with the Court at docket Nos. 5419-08 and 360-09S for the taxable years 2005 and 2006, respectively. On July 21, 2009, the Court entered a stipulated decision at docket No. 5419-08 that petitioner was liable for a tax deficiency of $8,182 and an accuracy-related penalty under section 6662(a) of $1,548 for the taxable year 2005. On December 4, 2009, the Court entered a stipulated decision at docket No. 360-09S that petitioner was liable for a tax deficiency of $1,287 for the taxable year 2006.

Respondent subsequently entered assessments against petitioner for tax, penalties, and interest for 2005 and 2006 (in accordance with the stipulated decisions described above) and issued notices of balance due for those years. When petitioner failed to pay the amounts due, respondent issued a final notice of intent to levy for 2005 and 2006 pursuant to section 6330(a). Petitioner responded to the notice by making a timely request for an administrative hearing with the Office of Appeals (Appeals Office) stating: "I am losing my employment and heading in to bankruptcy and my expenses far exceed any payment possibility." Petitioner requested that the Appeals Office place his accounts for 2005 and 2006 in "currently not collectible" status.

Petitioner's case was assigned to Settlement Officer Deborah Douglas (SO Douglas). After several false starts, in late July 2011 petitioner submitted to SO Douglas a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with supporting documentation including his earnings statement for the biweekly pay period ending July 7, 2011, a residential lease agreement in which he agreed to pay rent at a monthly rate of $1,600 for the period December 1, 2009, to November 30, 2011, various utility bills (phone, Internet, cable television, gas, and electric), car loan statements, and credit card statements.

The documentation submitted with petitioner's Form 433-A indicates that he did not have any significant cash or other assets on hand that could be liquidated to pay his outstanding tax liabilities.

Petitioner reported that his monthly wages were $5,256. Petitioner's earnings statement for the biweekly pay period ending July 7, 2011, indicated that his year-to-date gross earnings were $36,334. In addition to Federal and State income tax withholding, Social Security and Medicare tax, and health insurance premiums, petitioner's earnings statement indicated that he contributed $78.85 to a retirement account identified as 401K-C (with a year-to-date total of $1,090)

and $50.99 to a retirement account identified as 401K-L (with no year-to-date total

listed).

Petitioner reported the following monthly living expenses:

| Expense | Amount |
| --- | --- |
| Food, clothing, and misc. | $350 |
| Housing and utilities | 2,273 |
| Vehicle ownership costs | 677 |
| Vehicle operating costs | 480 |
| Health insurance | 134 |
| Taxes (income and FICA) | 1,320 |
| Other secured debts | 487 |
| Total | 5,721 |

Petitioner owned a 2005 Mercedes E Class sedan and was making monthly

payments on two car loans on the vehicle of $572.39 and $194.39, respectively.

Petitioner also had outstanding balances totaling approximately $1,200 on several

credit cards.

SO Douglas reviewed petitioner's financial statement and supporting

documents and compared the monthly living expenses that he reported with

national and local living expense standards for Frederick County, Maryland--

petitioner's place of residence at the time.  See sec. 7122(d)(2) (directing the

Secretary to publish national and local living expense standards for use in evaluating offers-in-compromise). SO Douglas adjusted petitioner's monthly income and living expenses as follows: (1) increased his monthly wages from $5,256 to $5,677 to account for year-to-date earnings reported on his earnings statement and adding back $154 representing the monthly amount that he contributed to the retirement account identified as 401K-C;[2] (2) increased the amount of his monthly expense for food, clothing, and miscellaneous items from $350 to $534; (3) increased his monthly expense for Federal and State income and employment taxes from $1,320 to $1,401 to account for amounts actually withheld from his wages; (4) increased the amount of his monthly expense for health care insurance from $134 to $146;[3] (5) decreased his monthly housing and utilities expense from $2,273 to $1,568;[4] (6) decreased his monthly expense for auto ownership from $677 to $496; (7)

_____

[2]SO Douglas noted that petitioner failed to provide any documentation with regard to the nature of his contributions to the sec. 401(k) retirement accounts listed on his earnings statement.

[3]This adjustment (in petitioner's favor) was made in error inasmuch as the relevant national and local living expense standard allows $60 per month for health care expenses for an individual under the age of 65. An allowance of $146 per month is provided for individuals over the age of 65. Petitioner is under the age of 65.

[4]Respondent conceded at trial that the correct amount of the monthly housing and utilities expense under the national and local standard for August 2011 was $1,806.

decreased his monthly auto operating expense from $480 to $270; and (8) decreased his secured debt from $487 to $194. In sum, SO Douglas concluded that petitioner's monthly wages totaled $5,677 and his basic monthly living expenses totaled $4,609, leaving him with $1,068 per month that could be used to pay his outstanding tax liabilities.

On August 22, 2011, the Appeals Office issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Sections 6320 and/or 6330 sustaining the proposed levy. Petitioner filed a timely petition with the Court in which he averred that he is "unable to pay any outstanding debt to the IRS due to the petitioner having income of $5,256.00 and expenses of $5,721.00 monthly".

Petitioner contends that the national and local standards that SO Douglas relied upon are unrealistic for the Washington, D.C., metropolitan area and SO Douglas failed to recognize that his actual living expenses exceeded the national and local standards. Petitioner also asserted that his basic living expenses should be measured against the national and local living expense allowances for Loudoun County, Virginia, where he now resides. Finally, petitioner maintains that his tax liability for 2005 was discharged in full by the bankruptcy court in February 2006.

Discussion

Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to an administrative hearing before the levy is made. Upon timely request, the person is entitled to an administrative hearing before the Appeals Office. Sec. 6330(b)(1).

In rendering an administrative determination in a collection review proceeding under section 6330, the Appeals Office must verify that the requirements of any applicable law and administrative procedure have been met in processing the taxpayer's case. Sec. 6330(c)(1). The Appeals Office also must consider any issues raised by the taxpayer relating to the collection action, including offers of collection alternatives, appropriate spousal defenses, and challenges to the appropriateness of the collection action. Sec. 6330(c)(2)(A). A taxpayer may challenge the existence or amount of his or her underlying tax liability if the taxpayer did not receive a notice of deficiency or did not otherwise have an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B). Finally, the Appeals Office must consider whether the collection action balances the need for efficient collection against the taxpayer's concern that collection be no more intrusive than necessary. Sec. 6330(c)(3)(C).

Section 6330(d)(1) grants this Court jurisdiction to review the administrative determination made by the Appeals Office. If the taxpayer's underlying tax liability is properly in dispute, the Court will review the determination de novo, and otherwise the Court will review the determination for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). An abuse of discretion occurs if the Appeals Office exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

We begin our analysis with petitioner's contention that his underlying tax liability for 2005 was discharged by the bankruptcy court. Petitioner first raised and abandoned this argument in the deficiency case that he prosecuted before the Court at docket No. 5419-08. Consistent with section 6330(c)(2)(B), petitioner is barred from raising such a challenge in this proceeding because he had a prior opportunity to do so in his earlier deficiency case. See, e.g., Kuykendall v. Commissioner, 129 T.C. 77, 80 (2007).

Even if petitioner were permitted to challenge his liability for 2005 in this case, it is clear that the bankruptcy court's discharge order affected only debts arising before the date of the "order for relief", i.e., October 15, 2005, which is the date he filed his petition for relief under chapter 7 of the Bankruptcy Code. See 11

U.S.C. secs. 301, 727(b) (2006). Petitioner's tax liability for 2005 arose and was due to be paid on April 17, 2006, which was the due date of his tax return for 2005. See sec. 6151; Imarah v. Commissioner, T.C. Memo. 2008-137, slip op. at 12 n.14. In sum, the bankruptcy court's discharge order had no impact on petitioner's tax liability for 2005.

We turn now to petitioner's argument that respondent abused his discretion by refusing to place his tax accounts for the years in issue in currently not collectible (CNC) status. Petitioner's request for CNC status amounted to a proposed collection alternative, and the Appeals Office was obliged to consider the matter in accordance with section 6330(c)(2)(A)(iii). See Pitts v. Commissioner, T.C. Memo. 2010-101.

Pursuant to section 7122(a), Congress authorized the Secretary to compromise any civil or criminal case arising under the internal revenue laws. Section 7122(d)(1) directs the Secretary to prescribe guidelines for IRS officers and employees to determine whether a compromise is adequate and should be accepted to resolve a dispute. Section 7122(d)(2) directs the Secretary to develop and publish schedules of national and local allowances designed to ensure that taxpayers entering into a compromise have adequate means to provide for basic living expenses.

Section 301.7122-1(b)(2), Proced. & Admin. Regs., states that the Secretary may agree to compromise a civil tax liability if there is doubt as to collectibility, e.g., where the taxpayer's assets and income are less than the full amount of the liability. In addition, a compromise based on economic hardship may be warranted if the imposition of a levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses. Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.; see Vinatieri v. Commissioner, 133 T.C. 392, 398 (2009). It is worth noting here that reasonable basic living expenses do not include the maintenance of an affluent or luxurious standard of living. Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. In accord with the foregoing, the Commissioner's internal procedures indicate that a taxpayer's account may be placed in CNC status when a levy will cause the taxpayer to be unable to provide for necessary living expenses. See Internal Revenue Manual pt. 1.2.14.1.14 (Nov. 19, 1980) (Policy Statement 5-71).

SO Douglas reviewed petitioner's financial information and concluded that sustaining the levy would not cause unwarranted economic hardship. Although the record reflects that SO Douglas strayed slightly from the applicable national and local standards, the errors she made were harmless. Ultimately, we are not

persuaded that the Appeals Office abused its discretion in determining to proceed with the proposed levy.

The Court has sustained the Commissioner's use of the IRS' published national and local allowances as guidelines for basic living expenses in evaluating the adequacy of proposed installment agreements and offers-in-compromise. See Speltz v. Commissioner, 124 T.C. 165, 179 (2005), aff'd, 454 F.3d 782 (8th Cir. 2006); Aldridge v. Commissioner, T.C. Memo. 2009-276; Fernandez v. Commissioner, T.C. Memo. 2008-210. More particularly, the Court has generally found no abuse of discretion where the Appeals Office used the housing and utilities standard allowances rather than the taxpayer's actual expenses. See, e.g., Aldridge v. Commissioner, T.C. Memo. 2009-276; Marks v. Commissioner, T.C. Memo. 2008-226.

SO Douglas reviewed petitioner's earnings statement and correctly increased his monthly wages from $5,256 to $5,677 to properly account for his year-to-date gross earnings and amounts he contributed to a retirement plan. See Aldridge v. Commissioner, T.C. Memo. 2009-276 (voluntary contributions to a retirement account are not considered a basic living expense).[5] The record reflects that the

---

[5]Petitioner did not offer any documentation during the administrative hearing or at trial indicating that the retirement plan contributions listed on his monthly

(continued...)

national and local standard amount for housing and utilities expenses applicable in petitioner's case was $1,806 as opposed to the $1,568 that SO Douglas allowed. Adjusting for that item, the record reflects that petitioner's monthly income exceeded his reasonable living expenses by several hundred dollars.

Although petitioner submitted documentation showing that his monthly living expenses, and particularly his housing and utilities expenditures, exceeded the national and local standards, he did not provide any information relating to extraordinary circumstances or other factors under section 301.6343-1(b)(4)(ii)(E) or (F), Proced. & Admin. Regs., that would justify a departure from the standards. See Aldridge v. Commissioner, T.C. Memo. 2009-276; McDonough v. Commissioner, T.C. Memo. 2006-234, aff'd sub nom. Keller v. Commissioner, 568 F.3d 710 (9th Cir. 2009). Petitioner has not shown that application of the national and local standards would deprive him of "adequate means to provide for basic living expenses." Sec. 7122(d)(2)(B); see Fernandez v. Commissioner, T.C. Memo. 2008-210. In the absence of such a showing, it was not an abuse of discretion for the Appeals Office to rely upon the national and local standards, even if doing so

---

[5](...continued)
earnings statement were mandatory as opposed to voluntary. See Internal Revenue Manual pt. 5.8.5.9 (Oct. 22, 2010).

forced petitioner to change his lifestyle.  See, e.g., Speltz v. Commissioner, 124 T.C. at 179; Perrin v. Commissioner, T.C. Memo. 2012-22.

As a final matter, petitioner contends that consideration should be given to the fact that he now resides in Loudoun County, Virginia, where his housing expenses are greater than when he lived in Frederick County, Maryland.  A remand to the Appeals Office for further consideration may, in some limited circumstances, be appropriate because of a material change in a taxpayer's factual circumstances.  See Churchill v. Commissioner, T.C. Memo. 2011-182.  However, petitioner has never offered an explanation for moving to Loudoun County.  Without more, there simply is no justification for a remand in this case.

Consistent with the preceding discussion, we hold that the Appeals Office determination to proceed with collection was not an abuse of discretion and the proposed levy is sustained.

To reflect the foregoing,

Decision will be entered

for respondent.