T.C. Memo. 2016-75

UNITED STATES TAX COURT

LANNY D. WALKER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24037-13L.                    Filed April 25, 2016.

Katie A. Lawson, for petitioner.

David M. McCallum, for respondent.

MEMORANDUM OPINION

RUWE, Judge:  This proceeding was commenced in response to a Notice of

Determination Concerning Collection Action(s) Under Section 6320 and/or 6330

(notice of determination) with respect to petitioner's 2006 and 2008 Federal

[*2] income tax liabilities.[1]  The remaining issue for decision is whether the settlement officer abused her discretion by sustaining the proposed levy action concerning petitioner's 2006 tax liability.

Background

The parties submitted this case fully stipulated pursuant to Rule 122.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioner resided in North Carolina.

Petitioner failed to timely file Federal income tax returns for the taxable years 2006 and 2008.  On July 27, 2010, respondent prepared a substitute for return (SFR) pursuant to section 6020(b) for each respective year.  On November 2, 2010, respondent issued notices of deficiency to petitioner based on the SFRs.  Petitioner did not petition the Tax Court from the notices of deficiency.

On April 18, 2011, respondent assessed deficiencies, additions to tax, and interest arising from the notices of deficiency, as follows:

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for all relevant years, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3]

| Year | Deficiency | Additions to tax | | | Interest |
| | | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) | |
| --- | --- | --- | --- | --- | --- |
| 2006 | $1,091,585 | $242,553.82 | $264,114.16 | [1]$49,649.85 | $294,850.26 |
| 2008 | 118,882 | 26,748.45 | 14,860.25 | 3,820.72 | 11,217.65 |

[1]The addition to tax under sec. 6654(a) for 2006 was abated on the same date it was assessed.

Also on April 18, 2011, respondent sent to petitioner notices and demand[2] for payment for his 2006 and 2008 tax liabilities, and petitioner did not respond to the notices or make any payments. Respondent sent to petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing (final notice), dated December 1, 2011, advising petitioner that respondent intended to levy to collect his unpaid tax liabilities for 2006 and 2008. On December 13, 2011, respondent filed a notice of Federal tax lien for petitioner's 2006 and 2008 tax years. Respondent issued a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under I.R.C. 6320 (notice of lien filing) on December 15, 2011.

In response to the final notice of intent to levy, on December 15, 2011, petitioner timely submitted a Form 12153, Request for Collection Due Process or Equivalent Hearing (CDP request), along with a copy of the Letter 1058 and a Form 2848, Power of Attorney and Declaration of Representative. In the CDP request petitioner did not propose a collection alternative and stated:

_____

[2]Subsequent notices and demand were made on May 23 and June 27, 2011.

**[\*4]**  I am not liable for (I don't owe) all or part of the taxes.  I am in the process of gathering data to properly file my 2006 & 2008 tax returns.  My former accountant died suddenly and I have been trying to track down the information he had to do my tax returns.

Petitioner did not submit a Form 12153 in response to the notice of lien filing.

On or about February 27, 2012, petitioner completed and submitted to respondent a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals.  On this form petitioner showed total monthly income (consisting of disability and rental income) of $11,491; monthly living expenses of $9,387; and net equity in real and personal property of $738,177.  Petitioner attached to this form numerous documents in support of his real property holdings and, if applicable, the debt associated with each property.

Petitioner filed his 2006 and 2008 Federal income tax returns on March 2 and April 18, 2012, respectively.[3]  Thereafter, respondent processed petitioner's 2006 and 2008 returns and made an abatement for each year to reflect the liabilities reported on the delinquent returns.  The abatement for petitioner's 2008 taxable year resulted in a remaining balance due of $64.35, which petitioner paid on June 25, 2012.  The parties stipulate that petitioner no longer has a balance due for the taxable year 2008 and there is no accrued, but unassessed, interest.  Since

---

[3]Petitioner filed his 2007 return on March 20, 2012.

**[*5]** petitioner's 2008 liability has been paid in full, there is no longer any need for respondent to levy to collect said liability. The parties further stipulate that respondent's determination as to petitioner's 2008 liability is moot.

On November 30, 2012, Appeals Settlement Officer James Payton (ASO Payton) sent a letter to Bobby Watson, one of petitioner's representatives designated in the Form 2848 included with petitioner's CDP request. In the letter, ASO Payton acknowledged receipt of petitioner's CDP request and scheduled a telephone conference call for December 18, 2012. On December 11, 2012, Mr. Watson called ASO Payton to inform him that petitioner had added another representative, Bobby Mosely, and requested that the hearing date be changed. The parties agreed to January 22, 2013. Also on December 11, 2012, ASO Payton confirmed that Mr. Mosely had a power of attorney on file.

On January 21, 2013, Certified Public Accountant (C.P.A.) Mary Jo Austell from Mr. Watson's office, sent to ASO Payton a facsimile requesting that the CDP hearing be rescheduled so that petitioner could submit an offer-in-compromise (OIC). On January 22, 2013, Mr. Mosely called ASO Payton to also request that the CDP hearing be rescheduled because petitioner planned to submit an OIC. The CDP hearing was rescheduled to February 19, 2013.

**[*6]**   On February 18, 2013, C.P.A. Austell sent to ASO Payton a facsimile informing him that petitioner wanted to participate in the hearing and providing an updated Form 433-A.  The updated Form 433-A showed that petitioner's total monthly income (consisting of disability and rental income) remained the same at $11,491; his total monthly living expenses increased from $9,387 to $9,990; and his net equity in real and personal property decreased from $738,177 to $570,333.  The updated Form 433-A, like the original Form 433-A, detailed petitioner's numerous real property holdings and, if applicable, the debt associated with each property.  Petitioner's hearing was rescheduled to February 26, 2013, and subsequently rescheduled to March 11, 2013.

On March 8, 2013, Mr. Mosely sent to ASO Payton a facsimile which included completed and signed copies of petitioner's Form 656, Offer in Compromise, and an updated Form 433-A.  Petitioner's OIC concerned his 2006 and 2007[4] tax liabilities and offered to satisfy these liabilities by paying $48,000 with an initial payment of zero and 24 subsequent monthly payments of $2,000.  Petitioner's proposed OIC was based on exceptional circumstances (effective tax administration).  Petitioner explained in the Form 656:

---

[4]We note that petitioner's taxable year 2007 is not at issue.

**[*7]** I am on permanent disability. As provided in my 433-A, my expenses are approximately 87% of my monthly disability. Although I have assets in the form of real property, the marker [sic] has prevented me from selling. The property has been advertised for sale - unsuccessfully. I did, however, sell one parcel in which all proceeds were turned over to the IRS. My mother is elderly and I am partially responsible for her care and upkeep. To pay the entire amount will, in-fact [sic], cause an economic hardship and would produce an unfair and inequitable result.

Petitioner's latest Form 433-A showed total monthly income (consisting of disability and rental income) of $11,941; total monthly living expenses of $9,898; and net equity in real and personal property of $573,337. Petitioner's claimed monthly expenses, as detailed in the latest Form 433-A, are as follows:

| Expense | Amount |
| --- | --- |
| Food, clothing and misc. | $2,550 |
| Housing and utilities | 1,953 |
| Transportation | 620 |
| Health care | 663 |
| Taxes (income and FICA) | 221 |
| Other secured debt | 891 |
| Other | 3,000 |
| Total | 9,898 |

Petitioner's latest Form 433-A, like the previous two Forms 433-A, detailed petitioner's real property holdings and, if applicable, the debt associated with each property. On March 11, 2013, ASO Payton reviewed the latest Form 433-A and noted that petitioner's claimed expenses for food and utilities were in excess of

**[*8]** national standards. ASO Payton also noted that petitioner had positive equity in multiple real estate parcels.

On March 11, 2013, Mr. Mosely and ASO Payton conducted a telephone CDP hearing in which Mr. Mosely indicated that petitioner was receiving only disability income and therefore qualified for exceptional circumstances. ASO Payton requested an original Form 656 so he could forward the OIC to be processed and considered by respondent's Centralized Offer in Compromise Unit (COIC Unit). On April 5, 2013, the COIC Unit received petitioner's signed and completed Form 656 concerning petitioner's 2006 and 2007 tax years. In this OIC petitioner offered $48,000 to satisfy his 2006 and 2007 tax liabilities to be paid over 24 months at $2,000 per month. This OIC was based on doubt as to collectibility.

Petitioner's OIC was assigned to Offer Examiner Bettie Spivey-Houston (OE Spivey-Houston) for consideration. On May 31, 2013, OE Spivey-Houston telephoned Mr. Mosely and left a voicemail concerning petitioner's pending OIC. On the same date, OE Spivey-Houston sent petitioner a letter informing him that the OIC could not be processed on the basis of the information provided. During a telephone call between Mr. Mosely and OE Spivey-Houston on June 3, 2013, OE Spivey-Houston requested profit and loss statements for petitioner's remaining

[*9] rental properties, bank statements, and proof of disability income.  On June 12, 2013, Mr. Mosely sent to OE Spivey-Houston via facsimile profit and loss statements for three rental properties, bank statements from December 11, 2012, to May 10, 2013, insurance policies, and two canceled disability checks from the Paul Revere Life Insurance Co. totaling $11,779.  OE Spivey-Houston determined that petitioner had received $11,779 in monthly disability income and had $6,962 in allowable monthly living expenses, as follows:

| Expense | Amount |
| --- | --- |
| Food, clothing and misc. | $583 |
| Housing and utilities | 990 |
| Transportation | 244 |
| Health insurance | 563 |
| Health care | 60 |
| Taxes (income and FICA) | 221 |
| Life insurance | 210 |
| Other secured debt | 891 |
| Additional car | 200 |
| Other | 3,000 |
| Total | 6,962 |

On June 20, 2013, OE Spivey-Houston determined that petitioner had disposable income of $4,817 per month ($11,779 – $6,962) and rejected petitioner's OIC.[5]

---

[5]OE Spivey-Houston multiplied $4,817 by 108 months to get $520,236, the amount recoverable before the expiration of the statute of limitations on collection.  She added to this amount $131,408 (the net equity in petitioner's assets) to arrive at $651,644, which exceeds petitioner's outstanding tax liabilities

(continued...)

[*10] In a July 1, 2013, letter to petitioner, Linda Johnson, OE Spivey-Houston's manager, notified petitioner of the preliminary decision to reject his offer because it was determined that petitioner could pay his liability in full within the time provided by law. The letter informed petitioner that his case would be forwarded to Appeals for a final determination and that any payments made with his offer would be applied against his liability.

On July 18, 2013, petitioner's case was assigned to Appeals Settlement Officer J.D. Mobley (ASO Mobley) for consideration. By letter dated July 25, 2013, ASO Mobley informed petitioner that Appeals had received his request for a CDP hearing and scheduled a telephone conference for August 14, 2013. Also on July 25, 2013, ASO Mobley prepared an asset equity table indicating that petitioner had net equity in real and personal property of $518,339. ASO Mobley also prepared income and expense tables indicating that petitioner had monthly income (consisting of rental and disability income) of $11,906 and allowable monthly living expenses of $6,025. ASO Mobley's expense allowances for food and clothing, housing and utilities, and vehicle ownership and operating costs were based on national and local standards for 2013 or the Fresh Start Allowance.

[5](...continued)
of $576,690.29.

**[*11]** Petitioner's future ability to pay was calculated by multiplying $5,881 (monthly disposable income) by 108 months, then adding $518,339 (petitioner's net equity in real and personal property), for a total of $1,153,487.[6]

On August 21 and 22, 2013, ASO Mobley received from Mr. Mosely, inter alia, updated information concerning petitioner's assets and monthly income and expenses. On August 27, 2013, Mr. Mosely telephoned ASO Mobley for the scheduled CDP hearing. The parties agreed to reschedule the CDP hearing to September 4, 2013. On September 3, 2013, ASO Mobley reviewed documentation submitted by Mr. Mosely and revised the asset equity table by decreasing petitioner's net equity in real and personal property from $518,339 to $333,569.[7] ASO Mobley also increased petitioner's allowable monthly living expenses from $6,025 to $7,025 on the basis of costs associated with the care of petitioner's mother. ASO Mobley then calculated petitioner's future ability to pay by multiplying $4,881 (petitioner's monthly disposable income) by 108 months, then

---

[6]ASO Mobley's asset equity table erroneously shows a total of $1,153,217. No explanation is given for this $270 discrepancy.

[7]The parties stipulate that ASO Mobley did not change the asset equity table after reviewing petitioner's updated financial documentation. This stipulation contradicts the record in this case. See Rule 149(b).

[*12] adding petitioner's net asset equity of $333,569, to arrive at $860,717. On September 4, 2013, the CDP hearing was rescheduled to September 5, 2013.

On September 5, 2013, Mr. Mosely and ASO Mobley conducted the CDP hearing via telephone. During the CDP hearing Mr. Mosely disagreed with certain expense disallowances, the use of national and local standards to limit allowable expenses, and the valuation of certain of petitioner's real estate holdings. ASO Mobley informed Mr. Mosely that a notice of determination would be issued. The following day ASO Mobley sent to Mr. Mosely a copy of the asset equity table and income expense tables revised on September 3, 2013.

On September 13, 2013, respondent mailed to petitioner a notice of determination. The notice of determination (1) informed petitioner that his proposed OIC based on doubt as to collectibility with special circumstances was unacceptable and (2) sustained the proposed levy.

## Discussion

Section 6330(a) provides that no levy may be made on any property or right to property of a person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made. If the person timely requests a hearing, a hearing shall be held before an impartial officer or employee of the Internal Revenue Service (IRS) Office of Appeals (Appeals). Sec. 6330(b)(1), (3).

[*13] The Appeals officer must verify at the hearing that the requirements of any applicable law or administrative procedure have been met.  Sec. 6330(c)(1).  At the hearing the taxpayer may raise any relevant issue relating to the unpaid tax or the proposed levy, including:  (1) appropriate spousal defenses; (2) challenges to the appropriateness of the collection action; and (3) "offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise."  Sec. 6330(c)(2)(A).  A taxpayer may contest the existence or amount of the underlying tax liability at the hearing if the taxpayer did not receive a notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B).  Taxpayers are expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing.  Sec. 301.6330-1(e)(1), Proced. & Admin. Regs.

Following the hearing, Appeals must determine whether proceeding with the proposed levy action is appropriate.  In making that determination, Appeals is required to take into consideration:  (1) verification presented by the Secretary during the hearing process that the requirements of applicable law and administrative procedure have been met; (2) relevant issues raised by the taxpayer;

**[\*14]** and (3) whether the proposed levy action balances the need for efficient collection of taxes with a taxpayer's concern regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3). In the instant case, the notice of determination sets forth verification of compliance with applicable law and administrative procedure, and petitioner does not challenge this verification. Petitioner does not dispute his underlying tax liabilities for the taxable years 2006 and 2008.

Section 6330(d)(1) grants this Court jurisdiction to review the determination made by Appeals. Where a taxpayer's underlying tax liability is not in dispute, the Court reviews an Appeals officer's determination for abuse of discretion. Lunsford v. Commissioner, 117 T.C. 183, 185 (2001); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). An abuse of discretion occurs if an Appeals officer exercises his or her discretion "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioner raises only issues relating to collection alternatives, specifically whether ASO Mobley abused her discretion by limiting expenses petitioner claimed in his OIC to amounts provided for by national and local standards. Because petitioner does not dispute the existence or amount of his underlying

[*15] liability for 2006,[8] we will review ASO Mobley's determination for abuse of discretion. Lunsford v. Commissioner, 117 T.C. at 185; Nicklaus v. Commissioner, 117 T.C. 117, 120 (2001).

Petitioner primarily makes two arguments before this Court. First, petitioner argues that ASO Mobley abused her discretion by limiting certain of his claimed monthly expenses pursuant to local and national standards. Second, petitioner argues that ASO Mobley abused her discretion by failing to properly consider petitioner's exceptional circumstances in denying his OIC. We will address each of these arguments in turn.

Section 7122(a) authorizes the Secretary to compromise any civil or criminal case arising under the internal revenue laws. Section 7122(d) provides that the Secretary shall prescribe guidelines for the evaluation of whether an OIC should be accepted. Regulations under section 7122 set forth three grounds for compromise of a taxpayer's liability: (1) doubt as to liability; (2) doubt as to

---

[8]Petitioner filed his 2008 Federal income tax return on April 18, 2012. The abatements for petitioner's 2008 taxable year resulted in a remaining balance of $64.35, which petitioner paid in full on June 25, 2012. The parties stipulate that petitioner no longer has a balance due for the 2008 taxable year and there is no accrued, but unassessed, interest. Since petitioner's 2008 liability has been paid in full, there is no longer a need for respondent to levy to collect said liability. The parties further stipulate that respondent's determinations as to petitioner's 2008 liability are moot. Accordingly, we will dismiss respondent's determination as to petitioner's 2008 liability on the grounds of mootness.

**[\*16]** collectibility; and (3) effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. Petitioner's OIC submission was based on doubt as to collectibility. A compromise based on doubt as to collectibility may be accepted "where the taxpayer's assets and income are less than the full amount of the liability." Sec. 301.7122-1(b)(2), Proced & Admin. Regs.

In a section 6330 proceeding, we do not normally conduct an independent review of whether an OIC is acceptable. Rather, our review is generally limited to determining whether the Appeals officer's rejection of the taxpayer's OIC was arbitrary, capricious, or without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). We have found no abuse of discretion where the Appeals officer followed the Commissioner's guidelines in rejecting the taxpayer's collection alternative. See, e.g., Schulman v. Commissioner, T.C. Memo. 2002-129, 2002 Tax Ct. Memo LEXIS 136, at \*19.

We find that ASO Mobley's consideration and subsequent rejection of petitioner's OIC was reasonable. Her determination was based on a financial analysis of petitioner's monthly income and expenses, net equity in real and personal property, and ability to pay. ASO Mobley used financial information that petitioner provided to construct an asset equity table of his net equity in real and

[*17] personal property and income and expense tables. After receiving and reviewing updated financial information from petitioner, ASO Mobley made the following adjustments to her calculations: (1) she revised the asset equity table by decreasing petitioner's net asset equity from $518,339 to $333,569 and (2) she increased petitioner's allowable monthly expenses from $6,025 to $7,025, allowing petitioner an extra $1,000 per month for the care of his mother.

ASO Mobley used national and local standards for 2013 to limit petitioner's allowable expenses for food and clothing, housing and utilities, and vehicle ownership and operating costs. The Internal Revenue Manual (IRM) provides for the use of national and local standards for food, clothing, housing, utilities, and vehicle expenses. See IRM pt. 5.15.1.8 (Oct. 2, 2012). National and local schedules of allowances are developed and published by the Secretary pursuant to the specific congressional directive of section 7122(d)(2)(A). Generally, an Appeals officer does not abuse his or her discretion in rejecting an OIC when following guidelines set forth in the IRM. Veneziano v. Commissioner, T.C. Memo. 2011-160, 2011 Tax Ct. Memo LEXIS 157, at *11. This Court has sustained the Commissioner's use of the IRS's national and local allowances as guidelines for basic living expenses in evaluating the adequacy of proposed installment agreements and OICs. See Speltz v. Commissioner, 124 T.C. 165, 179

**[\*18]** (2005), aff'd, 454 F.3d 782 (8th Cir 2006); Aldridge v. Commissioner, T.C. Memo. 2009-276, 2009 Tax Ct. Memo LEXIS 280, at \*15. Appeals officers may deviate from national and local standards when a taxpayer demonstrates with reasonable substantiation and documentation that he or she would not have adequate means to provide for basic living expenses. See sec. 7122(d)(2)(B); Marascalco v. Commissioner, T.C. Memo. 2010-130, aff'd, 420 F. App'x 423 (5th Cir. 2011). However, ASO Mobley properly determined that petitioner had adequate means to provide for his basic living expenses given his income, and petitioner did not substantiate otherwise. We hold that ASO Mobley did not abuse her discretion by adhering to national and local standards even if it forces petitioner to alter his lifestyle. See Perrin v. Commissioner, T.C. Memo. 2012-22, 2012 Tax Ct. Memo LEXIS 21, at \*8 (citing Speltz v. Commissioner, 124 T.C. at 179).

Petitioner also argues that ASO Mobley abused her discretion by not offering an effective tax administration OIC[9] because his rheumatoid arthritis may cause him to "experience an extreme economic hardship in the future." A petition commencing a CDP case in this Court must contain

_____

[9]We note that on March 8, 2013, petitioner submitted to ASO Payton via facsimile an effective tax administration OIC. However, the original signed OIC received by Appeals on April 1, 2013, was based on doubt as to collectibility.

**[*19]** [c]lear and concise assignments of each and every error which the petitioner alleges to have been committed in the notice of determination. Any issue not raised in the assignments of error shall be deemed to be conceded.

Rule 331(b)(4). Petitioner did not raise his medical condition (i.e., rheumatoid arthritis) when he filed his petition. Even if we were to consider this issue, petitioner acknowledges in his posttrial brief that he "did not provide documentation regarding his disability" to ASO Mobley during the CDP hearing. We generally consider only arguments and issues the taxpayer raised at the collection hearing or otherwise brought to the attention of Appeals. See Magana v. Commissioner, 118 T.C. 488, 493 (2002) (stating that it would be "anomalous * * * to conclude that * * * [an] Appeals Office abused its discretion under section 6330(c)(3) in failing to grant relief, or in failing to consider arguments, issues, or other matter[s] not raised by taxpayers or not otherwise brought to the attention of * * * [an] Appeals Office" during an administrative hearing); Taylor v. Commissioner, T.C. Memo. 2010-213, 2010 Tax Ct. Memo 267, at *8; see also sec. 301.6330-1(f)(2), Proced. & Admin. Regs. Accordingly, we find that ASO Mobley did not abuse her discretion by failing to properly consider petitioner's exceptional circumstances in denying his OIC.

**[\*20]** We conclude that the determination to proceed with the collection was not an abuse of ASO Mobley's discretion, and the proposed collection action for petitioner's 2006 liability is sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.