# United States Tax Court

T.C. Memo. 2022-5

EDMUND GERALD FLYNN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 10182-19L.                        Filed February 3, 2022.

————

Edmund Gerald Flynn, pro se.

*Michael J. De Matos* and *Mimi M. Wong*, for respondent.

## MEMORANDUM OPINION

URDA, *Judge*:  In this collection due process (CDP) case petitioner, Edmund Gerald Flynn, seeks review pursuant to section 6330(d)(1)[1] of the determination by the Internal Revenue Service (IRS) Office of Appeals[2] that upheld a notice of intent to levy with respect to his 2012–14 tax liabilities.  The Commissioner has moved for summary judgment, with the parties disputing whether the Office of Appeals abused its discretion in rejecting an offer-in-compromise (OIC) proposed

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[2] On July 1, 2019, the Office of Appeals was renamed the Independent Office of Appeals.  *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 891, 983 (2019).  As the events in this case predated that change, we will use the name in effect at the time relevant to this case, i.e., the Office of Appeals.

**[\*2]** by Mr. Flynn. Seeing no abuse of discretion, we will grant summary judgment to the Commissioner.

*Background*

The following facts are derived from the pleadings, the parties' motion papers, and the exhibits attached thereto. Mr. Flynn resided in New York when he timely petitioned this Court.

I.     *Mr. Flynn's 2012 Through 2014 Tax Liabilities*

Mr. Flynn did not file his 2012 federal income tax return. The IRS thereafter prepared a substitute for return for him based upon the authority conferred by section 6020(b). After sending Mr. Flynn a notice of deficiency,[3] the IRS assessed federal income tax of $7,680, as well as additions to tax for failure to timely file his return and failure to timely pay, and statutory interest.

Mr. Flynn filed his 2013 and 2014 tax returns late. The IRS assessed the tax reported on those returns and further assessed for each year additions to tax for failure to timely file his returns and pay his tax as well as statutory interest. All told, Mr. Flynn's tax liabilities for 2013 and 2014 exceeded his tax withholdings by $1,084 and $3,741, respectively.

II.    *Collection Activities*

A.     *Initial CDP Hearing*

As of February 12, 2018, Mr. Flynn's outstanding 2012–14 tax liabilities totaled $15,557. To collect this amount, the IRS sent Mr. Flynn a levy notice informing him of its intent to seize his assets and apprising him of his right to a hearing. Mr. Flynn timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, expressing his interest in either an OIC or an installment agreement.

The case thereafter was assigned to a settlement officer in the Office of Appeals. The settlement officer held a telephone CDP hearing with Mr. Flynn on June 14, 2018. After the settlement officer discussed with Mr. Flynn the liabilities at issue, the conversation turned to Mr.

---

[3] Mr. Flynn did not petition this Court in response to the notice of deficiency for tax year 2012.

[*3] Flynn's desire for an OIC in the interest of giving him "a fresh start." In response, the settlement officer advised Mr. Flynn to submit Form 656, Offer in Compromise, for evaluation by the Centralized Offer in Compromise (COIC) unit.

### B. *COIC Consideration and Rejection*

On October 15, 2018, Mr. Flynn submitted Form 656, proposing an OIC of $3,600 to settle his 2007, 2009, and 2011–17 tax liabilities. Mr. Flynn premised his OIC on doubt as to collectibility, indicating that he would pay $150 monthly for 24 months if the OIC were accepted.

In support of his OIC Mr. Flynn provided Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. On that form, he identified his assets as $239 in a bank account, a life insurance policy worth $800, and a collection of license plates valued at $4,000. With respect to income, he listed a monthly stipend of $333 and monthly retirement payments (Social Security and pension) of $4,973. He further claimed that his wife received approximately $4,769 from Social Security and her pension.

Mr. Flynn reported $3,321 in expenses, including $770 monthly for food, clothing, and miscellaneous items and $1,800 per month that he paid to his wife for household expenses. In total, Mr. Flynn's Form 433-A showed $1,652 in monthly income in excess of his expenses.

On April 9, 2019, the COIC unit sent Mr. Flynn a letter stating that it would recommend rejection of his OIC. Comparing Mr. Flynn's monthly income to his expenses, the COIC unit determined that his net monthly income was $2,752. In reaching this conclusion, the COIC unit found that Mr. Flynn's monthly income was $5,293, which is more than what he had reported. To determine Mr. Flynn's allowable expenses, the COIC unit either relied on IRS national and local standards or adopted the expense amounts Mr. Flynn had reported on his Form 433-A. For food, clothing, miscellaneous, and housing expenses, the COIC unit used the IRS's standard allowances and multiplied those amounts by 53%, Mr. Flynn's proportionate share of the total household income.

The COIC unit concluded that Mr. Flynn had a reasonable collection potential (RCP) of $330,206 over the following ten years, based

**[\*4]** on his net monthly income and assets of \$800.[4]  Noting that Mr. Flynn's disposable monthly income would allow him to pay his total outstanding tax liability of \$63,821 (which included the years at issue in this case but additionally included years as far back as 2007) in 25 months, the COIC unit recommended rejection of Mr. Flynn's \$3,600 OIC.

### C.  *Rejection and Notice of Determination*

After receiving the COIC recommendation, the settlement officer called Mr. Flynn and proposed an installment agreement for \$750 per month.  Mr. Flynn refused to enter into an installment agreement or pay more than \$250 per month, arguing that he could not afford to pay more.  Concluding that they had reached an impasse, the settlement officer issued a notice of determination rejecting Mr. Flynn's proposed OIC and sustaining the proposed levy action for tax years 2012 through 2014.

### III.  *Tax Court Proceedings and Supplemental CDP Hearing*

Mr. Flynn filed a timely petition in this Court.  He thereafter alerted the IRS to a potential change in his financial condition, which led to a remand for a supplemental CDP hearing so that the Office of Appeals might consider the purported changes in Mr. Flynn's financial circumstances.

During the supplemental hearing, Mr. Flynn introduced documentation of certain additional expenses, including student loan payments, lawncare and snow plowing expenses, and outstanding credit card debt.  The settlement officer determined that Mr. Flynn's monthly disposable income was \$1,783 based upon the loan, lawncare, and snow plowing expenses.  The settlement officer refused to recognize Mr. Flynn's credit card debt, however, in light of Mr. Flynn's admission that the underlying charges were not for necessary living expenses.

Given that Mr. Flynn's monthly disposable income (\$1,783) remained considerably higher than the amount proposed for the

---

[4] The Commissioner has promulgated guidelines for the evaluation of OICs, and the calculation of a taxpayer's RCP plays a central role in that evaluation.  *See Abraham v. Commissioner*, T.C. Memo. 2021-97, at \*7 n.4; Internal Revenue Manual (IRM) 5.8.5.1(1) (Sept. 24, 2021).  RCP is generally calculated by multiplying a taxpayer's monthly income available to pay taxes by the number of months remaining in the statutory period for collection and adding realizable equity in assets.  *See Johnson v. Commissioner*, 136 T.C. 475, 485 (2011), *aff'd*, 502 F. App'x 1 (D.C. Cir. 2013).

**[\*5]** monthly installment agreement payments ($750), the settlement officer again offered that collection alternative. Mr. Flynn refused, reasserting his request for monthly payments of $250. Having reached the same impasse as before, the settlement officer issued a supplemental notice of determination rejecting Mr. Flynn's OIC and upholding the notice of intent to levy.

*Discussion*

I. *Summary Judgment*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Under Rule 121(b) the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Id.* However, the nonmoving party may not rest upon the mere allegations or denials of its pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

II. *Standard of Review*

Pursuant to section 6330(d)(1), we have jurisdiction to review the Office of Appeals' determination. *See Murphy v. Commissioner*, 125 T.C. 301, 308 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). Where, as here, the underlying tax liability is not at issue, we review the determination of the Office of Appeals for abuse of discretion. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). In reviewing for abuse of discretion we must uphold the Office of Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law. *Murphy*, 125 T.C. at 320; *Taylor v. Commissioner*, T.C. Memo. 2009-27, 2009 WL 275721, at \*9.

III. *Abuse of Discretion*

In determining whether the Office of Appeals abused its discretion, we consider whether the settlement officer: (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues Mr. Flynn

**[\*6]** raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [Mr. Flynn] that any collection action be no more intrusive than necessary." § 6330(c)(3). Our review of the record establishes that the settlement officer satisfied all the requirements.

### A. *Verification*

We have authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. *See Hoyle v. Commissioner*, 131 T.C. 197, 200–03 (2008), *supplemented by* 136 T.C. 463 (2011). Mr. Flynn has not at any point in this case challenged the verification requirement, and we conclude from the record that the settlement officer conducted a thorough review of Mr. Flynn's account transcripts and verified that all applicable requirements were met. *See* Rules 121(d), 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded.").

### B. *Issues Raised*

#### 1. *Legal Background*

Mr. Flynn raises only one issue: whether the settlement officer abused her discretion when she rejected Mr. Flynn's OIC.[5] Section 7122(a) authorizes the IRS to compromise an outstanding tax liability on grounds that include doubt as to collectibility, the ground that Mr. Flynn asserted. *See* Treas. Reg. § 301.7122-1(b)(2). The IRS may compromise a tax liability on this basis where the taxpayer's assets and income are less than his full amount of liability. *Id.* Conversely, the IRS may reject an OIC when the taxpayer's RCP exceeds the amount he proposes to pay. *See Johnson*, 136 T.C. at 486. Generally, settlement officers will reject any offer substantially below the taxpayer's RCP unless special circumstances justify acceptance of such an offer. *See Mack v. Commissioner*, T.C. Memo. 2018-54, at \*10; Rev. Proc. 2003-71, § 4.02(2), 2003-2 C.B. 517, 517.

In reviewing the settlement officer's determination we do not decide for ourselves what would be an acceptable collection alternative. *Thompson v. Commissioner*, 140 T.C. 173, 179 (2013); *Murphy*, 125 T.C.

---

[5] Although Mr. Flynn's Form 656 proposed an OIC of $3,600, the settlement officer evaluated Mr. Flynn's subsequent oral proposal of $6,000 ($250 for 24 months). We accordingly will evaluate the settlement officer's actions considering the higher OIC proposal of $6,000.

**[\*7]** at 320; *see Randall v. Commissioner*, T.C. Memo. 2018-123, at \*9 ("We . . . do not recalculate a different amount for an acceptable installment agreement or OIC."). Our review instead is limited to determining whether the settlement officer abused her discretion—that is, whether her decision to reject Mr. Flynn's offer was arbitrary, capricious, or without sound basis in fact or law. *See Thompson*, 140 T.C. at 179; *Murphy*, 125 T.C. at 320. We have jurisdiction to review a settlement officer's rejection of an OIC that encompasses liabilities for both CDP years and non-CDP years. *See, e.g., Sullivan v. Commissioner*, T.C. Memo. 2009-4, 2009 WL 20979, at \*8–9.

### 2. *Analysis of OIC*

The settlement officer did not abuse her discretion in rejecting Mr. Flynn's OIC in light of the financial analysis establishing that Mr. Flynn's monthly net income was $1,783. Mr. Flynn raises no objection regarding the settlement officer's calculation of his income. He instead takes aim at her disallowance, after the supplemental CDP hearing, of a portion of his reported housing expenses of $2,000 and of certain monthly credit card payments. We find no fault as to either.

As to the former, Mr. Flynn asserts that he spent (via payments to his wife) $2,000 per month on household expenditures and that the settlement officer abused her discretion by failing to consider the full amount in determining his net monthly income. But she had no obligation to do so. "Pursuant to Congress' directive, the IRS has published 'national and local allowances' to ensure that taxpayers entering into collection alternatives have adequate means to provide for basic living expenses." *Ansley v. Commissioner*, T.C. Memo. 2019-46, at \*16 (quoting § 7122(d)(1) and (2)(A)). And we have upheld a settlement officer's use of those standards to calculate basic living expenses when considering whether to accept a proposed OIC. *Id.* at \*16–17 (citing *Speltz v. Commissioner*, 124 T.C. 165, 179 (2005), *aff'd*, 454 F.3d 782 (8th Cir. 2006)). As is relevant here, the Internal Revenue Manual directs that generally a taxpayer is allowed the lesser of the applicable local standards or the amounts that he actually paid monthly with respect to housing and utility expenses. *See* IRM 5.15.1.8(5) (July 24, 2019), 5.15.1.10.1 (Nov. 22, 2021).

In this case the settlement officer took into account $1,315 for housing expenses, which was consistent with the applicable local standard in effect at the time. We see no abuse of discretion in the settlement officer's decision to follow the IRS standards in this regard.

[*8] *See Walker v. Commissioner*, T.C. Memo. 2016-75, at *17–18; *Glossop v. Commissioner*, T.C. Memo. 2013-208, at *13–14, *Ramdas v. Commissioner*, T.C. Memo. 2013-104, at *30–31.[6]

Mr. Flynn asserts that the allowances were insufficient because they did not support his particular lifestyle. Deviations from the national and local allowances set by the IRS, however, are permitted only upon a showing that the standard amounts are "inadequate to provide for a specific taxpayer's basic living expenses." IRM 5.15.1.8(6) (July 24, 2019); *see Ansley*, T.C. Memo. 2019-46, at *18. The taxpayer bears the burden of providing sufficient information to justify a deviation from local standards. *Ansley*, T.C. Memo. 2019-46, at *18; *Thomas v. Commissioner*, T.C. Memo. 2015-182, at *27. Mr. Flynn fails to point to any specific facts indicating that the standard housing amount was inadequate to accommodate for his basic living expenses.

Mr. Flynn fares no better regarding his credit card payments. As we have observed previously, credit cards are generally considered a method of payment, not a category of expense. *See Love v. Commissioner*, T.C. Memo. 2019-92, at *12 n.6; IRM 5.15.1.11(3) (Aug. 29, 2018). We therefore must examine the nature of the payments to determine whether they constitute necessary living expense payments. Mr. Flynn dooms his own argument by his admission that the credit card debt had not been incurred to pay basic living expenses.

We consequently find no abuse of discretion in the settlement officer's rejection of Mr. Flynn's OIC of $6,000 given her well-reasoned analysis showing monthly disposable income far exceeding the amount of his offer.

C.     *Balancing Analysis*

Mr. Flynn did not allege in his petition or argue at any later point that the settlement officer failed to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." *See* § 6330(c)(3)(C). He thus has conceded this issue. *See* Rules 121(d), 331(b)(4). In any event the settlement officer expressly concluded in the supplemental notice of

---

[6] In any event, even if the settlement officer had recognized the full $2,000 in housing expenses reported by Mr. Flynn, his net monthly disposable income would still be more than $1,000, thus justifying the rejection of the OIC proposing payments of $250 per month. *See, e.g.*, *Glossop*, T.C. Memo. 2013-208, at *15–16.

**[\*9]** determination that the proposed levy action balanced the need for efficient tax collection with Mr. Flynn's legitimate concerns about intrusiveness since a collection alternative could not be reached. We find in the record no basis for disturbing the settlement officer's conclusion regarding this requirement.

IV.    *Conclusion*

Finding no abuse of discretion, we will grant summary judgment for the Commissioner and affirm the IRS's determination to sustain the proposed collection action.

To reflect the foregoing,

*An appropriate order and decision will be entered.*